# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

JACK AARON PIERCE,

    Plaintiff,

vs.                                                                No. 18 CV 01090 JAP/KBM

THE BOARD OF COUNTY COMMISSIONERS
OF THE COUNTY OF VALENCIA, NEW MEXICO,
in their official capacity, LOUIS BURKHARD, Sheriff
of Valencia County,
SEAN LAURSEN, Deputy Sheriff, in his individual
and official capacity,
JAMES HARRIS, Deputy Sheriff, in his individual
and official capacity,
JOHN DOES 1-10, in their individual
and official capacities,
JANE DOES 1-10, in their individual
and official capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' MOTION TO DISMISS
## OR ALTERNATIVELY FOR SUMMARY JUDGMENT UNDER
## *HECK V. HUMPHREY* AND ON THE BASIS OF
## QUALIFIED IMMUNITY

In DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT UNDER *HECK V. HUMPHREY* AND ON THE BASIS OF QUALIFIED IMMUNITY (Doc. No. 18) (Motion) Defendants[1] ask the Court to dismiss Count 11, the one remaining count in the FIRST AMENDED COMPLAINT FOR DAMAGES FOR ASSAULT AND BATTERY, UNLAWFUL (EXCESSIVE) USE OF FORCE, VIOLATIONS OF CIVIL

---

[1] The Motion was filed on behalf of "Defendants." The Court will assume that the part of the Motion asking for dismissal under *Heck v. Humphrey*, 512 U.S. 477 (1994) has been brought on behalf of all named Defendants. However, only the individual Defendants can assert qualified immunity. Hence, the Court will treat that part of the Motion accordingly.

1

RIGHTS, PERSONAL INJURIES AND FOR VIOLATIONS OF THE NEW MEXICO TORT CLAIMS ACT (Doc. No. 1-2) (Complaint).[2] The Motion is fully briefed. *See* PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS OR SUMMARY JUDGMENT (Doc. No. 22) (Response); and DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT UNDER *HECK V. HUMPHREY* AND ON THE BASIS OF QUALIFIED IMMUNITY (Doc. No. 23) (Reply). The Court granted Plaintiff leave to file PLAINTIFF'S SURREPLY TO MOTION TO DISMISS (Doc. No. 25-1) (Surreply). In Count 11, Plaintiff asserts claims under 42 U.S.C. § 1983 against all Defendants for violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution arising from a physical altercation during his arrest.

In the Motion, Defendants argue that the Court should dismiss Count 11 because under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), Plaintiff is barred from bringing a claim for excessive force arising out of the same incident that supported Plaintiff's plea of guilty to the charge of battery on a peace officer under NMSA 1978 § 30-22-24. Alternatively, Defendants Laursen and Harris ask the Court to dismiss Count 11 because they are entitled to qualified immunity from Plaintiff's claims for inadequate medical care. Defendants Laursen and Harris contend that there is no clearly established law requiring Defendants to provide Plaintiff with medical care in addition to calling an ambulance to the scene.

---

[2] Counts 1-10 have been dismissed with prejudice. *See* STIPULATED ORDER DISMISSING COUNTS 1-10 WITH PREJUDICE (Doc. No. 15).

I.     STANDARD OF REVIEW

Under Rule 12(b)(6) a court may dismiss a claim "for failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is ... to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) (citation omitted). In evaluating a Rule 12(b)(6) motion, the court must "accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view the facts in the light most favorable to the nonmoving party." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir. 1998). Even though the court must accept as true all well-pleaded facts in the complaint, the court is under no obligation to accept bare conclusory allegations. *Hall v. Belmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). And the court is not required to accept legal conclusions without factual support. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To summarize, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true...." *Twombly*, 550 U.S. at 555. Rule 56 allows a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"The doctrine of qualified immunity protects public or government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant asserts qualified immunity, the plaintiff bears the heavy burden of satisfying a "strict

3

two-part test." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (citation omitted). The plaintiff must establish 1) that the defendant violated a constitutional or statutory right, and 2) that the right was clearly established at the time of the defendant's conduct. *Courtney v. Oklahoma ex rel., Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013).

"If the plaintiff fails to satisfy either part of this two-part inquiry, the court must grant the defendant qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted). But, if the plaintiff succeeds in carrying his two-part burden, the burden shifts to the defendant who must show there are no remaining material issues of fact that would defeat the claim of qualified immunity. *Walton v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

II. FACTUAL BACKGROUND

The following facts taken from the Complaint are accepted as true. On April 7, 2015 at about 6:30 pm, Plaintiff Jack Aaron Pierce (Plaintiff) was sleeping in the passenger's seat of a vehicle parked in front of a residence in Valencia County, New Mexico. (Compl. ¶ 12.) Plaintiff's friend, Sharon Hopkins, was sitting in the driver's seat of the vehicle. (*Id.* ¶ 13.) The Complaint alleges that suddenly and without warning, multiple Valencia County Sheriff's Department (VCSD) patrol units pulled up directly behind the vehicle and in "an aggressively violent, threatening and insolent manner block[ed] and prevent[ed] their vehicle from having any ability to move whatsoever." (*Id.* ¶ 14.) Defendants Sean Laursen (Deputy Laursen) and James Harris (Deputy Harris) (together, the Deputies), "with their weapons unholstered," approached each side of the vehicle and ordered Plaintiff and Ms. Hopkins to raise their hands. (*Id.* ¶ 15.) Ms. Hopkins was ordered to exit the vehicle, which she did through the driver's window because the driver's side door was inoperable. (*Id.*) Plaintiff awoke and became confused upon seeing

4

Ms. Hopkins climbing out of the window. Deputy Harris was standing by Ms. Hopkins' driver's side door with his weapon drawn when he ordered her to sit on the ground away from the vehicle. (*Id.* ¶ 17.)

The Deputies ordered Plaintiff to raise his hands and remain in the vehicle. However, Plaintiff was then ordered to exit the vehicle. (*Id.*) Deputy Laursen, who was standing near the passenger's side of the vehicle, holstered his firearm, drew his taser, and pointed the taser at Plaintiff's face through the open window. (*Id.* ¶ 18.) Plaintiff's passenger's side door was blocked, and Plaintiff could not exit the vehicle. (*Id.*)

Plaintiff, confused and afraid, tried to explain that he and Ms. Hopkins were just sitting in the vehicle "minding their own business and that they had not done anything wrong or illegal." (*Id.* ¶ 19.) During the encounter, the Deputies never stated "they were in possession of any warrant nor did they offer a warrant number or reason whatsoever for their aggressive" actions. (*Id.* ¶¶ 20, 26, 30.) Plaintiff "carefully and respectfully attempted to move Defendant Laursen's taser away from his face with his right hand." (*Id.* ¶ 21.) Deputy Laursen, however, "grabbed Plaintiff Pierce's right wrist injuring it as he cleared a path between Plaintiff Pierce's face and his taser weapon." (*Id.*) While Deputy Laursen held Plaintiff's wrist, Plaintiff "was able to move the remainder of his body toward the center of the vehicle and away from the taser as Defendant Laursen pointed it through the window while persisting with his unlawful physical detaining of Plaintiff Pierce's right wrist." (*Id.* ¶ 22.)

Apparently, another officer yelled "taser him," and Deputy Laursen fired his taser at Plaintiff's face. (*Id.* ¶ 23.) Plaintiff was able to shield his face with his other hand "where it was met with the taser prong causing injury." (*Id.*) Deputy Laursen then "moved his entire upper

5

body into the vehicle through the passenger side window stunning Plaintiff Pierce's body multiple times with the stun option of the taser, causing additional injury." (*Id.*)

Deputy Harris "entered the back seat of the vehicle through the right rear door where he was able to apply a choke hold" on Plaintiff causing additional injury. (*Id.* ¶ 24.) While Plaintiff was being held in the choke hold, Deputy Laursen drew his baton and began violently swinging at Plaintiff "striking him on portions of his arms, head and body causing further serious injury." (*Id.* ¶ 25.) While still in the vehicle, Plaintiff was "tasered and or body stunned (sic) at least two more times." (*Id.* ¶ 27.) Plaintiff denies resisting arrest or physically battering the Deputies. (*Id.*)

Plaintiff was then "violently, and without purpose, dragged out of the vehicle through the passenger side window where he was forcefully thrown to the ground bleeding and in pain[.]" (*Id.* ¶ 28.) While on the ground, Plaintiff was handcuffed, "kicked in the face and head by Defendants, kneeled on by Defendants and then watched from the ground while Defendants and other VCSD deputies celebrated and unlawfully searched Plaintiff's vehicle." (*Id.* ¶ 29.) The Deputies did not offer to render first aid. (*Id.*) In a "desperate attempt to prevent further battery and injury by Defendants, … Plaintiff told the Defendants Laursen and Harris there were drugs in the house they were at." (*Id.*)

After several minutes elapsed, an ambulance arrived, and medical personnel attempted to assess and treat Plaintiff's injuries. (*Id.* ¶ 31.) During the medical assessment, the Deputies "continued to hurry medical personnel to finish with Plaintiff Pierce slandering him by stating he deserved everything he got, that he was a murderer and fired guns at children, that Plaintiff Pierce was fit for incarceration and that the ambulance service was simply dispatched as a procedural requirement only and for no other reason." (*Id.*) Medical personnel provided "very little medical treatment … despite Plaintiff Pierce's request to go to the hospital." (*Id.* ¶ 32.)

6

Plaintiff was transported to the Valencia County Detention Center (VCDC), but "the Detention Center personnel refused to book Plaintiff Pierce as a result of the severity of his many bodily injuries." (*Id*. ¶ 33.) Deputy Laursen took Plaintiff to Los Lunas Medical clinic "where he received just enough treatment to stop the bleeding from the injuries he sustained to his head[.]" (*Id*. ¶ 34.) Deputy Laursen then took Plaintiff back to the VCDC. (*Id*.)

Plaintiff was indicted on two counts: Count 1 for battery on a peace officer; and Count 2 for resisting, evading, or obstructing an officer. *See State of New Mexico v. Pierce*, D1314 CR 2015-168, GRAND JURY INDICTMENT (Reply Ex. A (Doc. No. 22-1)) (Indictment). Plaintiff pleaded guilty to Count 1 charging a violation of NMSA 1978 § 30-22-24, battery on a peace officer, a fourth degree felony. *See* AMENDED JUDGMENT, SENTENCE AND APPEARANCE AND PLEA (Mot. Ex A at 3) (Amended Judgment).

In Count 11, Plaintiff asserts that Deputy Laursen, Deputy Harris, the Board of County Commissioners of Valencia County, Sheriff Louis Burkhard, and other unnamed parties through their "acts and or omissions" violated Plaintiff's rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. (*Id*. ¶¶ 94–98.)

III.  DISCUSSION

    A.    The Court will dismiss all claims brought under theory of *respondeat superior*.

The Complaint indicates that all claims against the Board of County Commissioners and Sheriff Burkhard were brought under the doctrine of *respondeat superior*. However, the doctrine of *respondeat superior* does not apply to claims under 42 U.S.C. § 1983; therefore, the Court will *sua sponte* dismiss Count 11 against the Board of County Commissioners and Sheriff Burkhard. *See Dodds v. Richardson*, 614 F.3d 1185, 1197–99 (10th Cir. 2010) (recognizing that government officials may not be held liable for the unconstitutional conduct of their subordinates

under a theory of *respondeat superior*); *Curley v. Perry*, 246 F.3d 1278, 1283 (10th Cir. 2001) (allowing *sua sponte* dismissal of unmeritorious claim).

        B.      *Heck v. Humphrey* does not bar Plaintiff's excessive force claim against Deputy Laursen and Deputy Harris.

Defendants argue that, as a matter of law, Plaintiff is barred from bringing a claim for excessive force under *Heck v. Humphrey*, 512 U.S. at 486–87 because he pleaded guilty to battery on a peace officer. In *Heck*, the Supreme Court held that a plaintiff could not bring a claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid. *Id.* at 480–87. When a state prisoner seeks damages in a § 1983 suit, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction of sentence has already been invalidated." *Id.* at 487.

The Tenth Circuit has recognized that an excessive force claim may be barred under *Heck* because the theory of the claim may be inconsistent with the prior conviction. *Havens v. Johnson*, 783 F.3d 776, 782–83 (10th Cir. 2015). Conversely, "[a]n excessive force claim against an officer is not necessarily inconsistent with a conviction for assaulting the officer." *Id.* at 782. Courts should analyze the specific circumstances surrounding the excessive force claim as compared to the circumstances supporting the conviction. In *Havens*, the plaintiff pleaded guilty in Colorado state court to first degree attempted assault of a police detective. *Id.* at 780–81. The plaintiff brought a § 1983 claim alleging the detective used excessive force because the detective shot the plaintiff while the plaintiff was driving toward the detective to escape arrest. *Id.* In the § 1983 claim, however, the plaintiff denied that he had attempted to run over the detective. *Id.* at 777. The Tenth Circuit concluded that the plaintiff's claim was barred under *Heck*. *Id.* To

support his § 1983 claim, the plaintiff alleged "that Johnson's use of force was unreasonable because [the plaintiff] did not have control of the car[.] … In other words, he did nothing wrong and did not intend or attempt to injure [the detective]." *Id.* at 783. The court concluded that those allegations "could not sustain the elements of attempted first-degree assault under Colorado law." *Id.*

In the *Havens* opinion, the court relied on *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007). In *DeLeon* the court found that a plaintiff's excessive force claim was barred under *Heck* because the plaintiff claimed complete innocence under the same circumstances as his conviction for resisting arrest:

> [The plaintiff's] claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance. Instead, [he] claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alternative pleading or theory of recovery…. [The] suit squarely challenges the factual determination that underlies his conviction for resisting an officer. If [the plaintiff] prevails, he will have established that his criminal conviction lacks any basis.

*Id.* at 657.

In this case, Plaintiff pleaded guilty to Count 1 of an Indictment, which charged:

> [O]n or about April 7, 2015, in Valencia County, New Mexico, [Plaintiff] did **touch or apply force** in a manner that **physically injured, jeopardized the safety of or challenged the authority of Sgt. James Harris**, knowing or having reason to know that Sgt. James Harris was a peace officer with Valencia County Sheriff's Office **in the lawful performance of his duties**, a Fourth Degree Felony Offense, contrary to NMSA 1978 Section 30-22-24.

*See* Reply Ex. A (Doc. No. 22-1) at 1 (emphasis added). The offense of battery on a peace officer is defined:

> A. Battery upon a peace officer is the **unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties**, when done in a rude, insolent or angry manner.
> B. Whoever commits battery upon a peace officer is guilty of a fourth degree felony.

9

NMSA 1978 § 30-22-24 (emphasis added).

Plaintiff points to the language of the Amended Judgment which merely indicates that Plaintiff pleaded guilty to battery on an unspecified officer through unspecified acts in an unspecified context. *See* Mot. Ex. A. Plaintiff contends that his claims that Deputy Laursen and Deputy Harris used excessive force during the altercation in the car and after the arrest while Plaintiff was in handcuffs will not invalidate Plaintiff's conviction for battery on a peace officer "while he is in the lawful discharge of his duties." *Heck*, 512 U.S. at 487 ("But if the district court determines that the plaintiff's actions, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed.").

Plaintiff alleges that Deputy Harris entered the backseat of the vehicle and put Plaintiff in a chokehold while Plaintiff was struggling with Deputy Laursen. Those allegations, if established, would not necessarily nullify Plaintiff's conviction for battery on Deputy Harris because even if Plaintiff battered Deputy Harris in the car, Deputy Harris could have overreacted to Plaintiff's battery by using excessive force, i.e. the chokehold. Or, Deputy Harris could have engaged in excessive force if the evidence shows Deputy Harris used force on Plaintiff after Plaintiff was on the ground handcuffed.

In *Naranjo for Naranjo v. Herrera*, the court determined that two jail detainees, who were convicted under the same statute for battery on jail guards could bring a claim of excessive force against the guards arising from the same altercation. *Naranjo for Naranjo v. Herrera*, CV 12-0898 RB/SCY, 2014 WL 12787953, at *1 (D.N.M. Sept. 17, 2014) (unreported). The defendants argued that the plaintiffs' conviction for battery on a peace officer necessarily required the officer to have been in lawful discharge of his duties, which would be nullified if he

was found liable for excessive force. *Id.* at *3. However, the court disagreed: "Notwithstanding *Heck*, a plaintiff can claim that a lawful arrest was conducted in an unlawful manner. *Id.* (citing *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999) (noting that a plaintiff suing for excessive force need not negate the lawfulness of the arrest)). In *Martinez*, the Tenth Circuit explained, "*Heck* does not bar a Fourth Amendment claim based on excessive force…. The state court's finding that [an arrestee] resisted a lawful arrest, …may coexist with a finding that the police officers used excessive force to subdue him." *Id.* at 1126-27. The court in *Naranjo*, stated that "excessive force claims did not challenge the lawfulness of the arrest and conviction for battery on a peace officer because, "[a] jury could find that the officers were justified in using force to subdue detainees who were assaulting and battering them, but still find that the officers used excessive force in retaliation." 2014 WL 12787953 at *3. *Heck* will not bar Plaintiff from pursuing this claim against Deputy Harris if Plaintiff shows that Deputy Harris used excessive force in the incident. *Id.* This Court, however, may instruct the jury that Plaintiff's arrest and conviction for battery on a peace officer was lawful. *Martinez*, 184 F.3d at 1127.

Plaintiff alleges that Deputy Laursen blocked the passenger door preventing Plaintiff from exiting, grabbed Plaintiff's wrist through an open window, and tased Plaintiff repeatedly. Plaintiff pleaded guilty only to battery on Deputy Harris. Plaintiff's success on the excessive force claim against Deputy Laursen will not invalidate the conviction for battery on Deputy Harris and therefore is not barred under *Heck*. *See Adams v. Dyer*, 223 F. App'x 757, 761 (10th Cir. 2007) (holding that bar of claims against two officers who were subject of assault conviction did not affect claim against third officer for excessive force because third officer was not involved in the altercation that supported assault conviction).

Plaintiff further alleges that he was "kicked in the face and head by Defendants, kneeled on by Defendants" while he was subdued on the ground in handcuffs. These allegations against both Deputies support a claim of excessive force and can coincide with Plaintiff's conviction for battery on Deputy Harris while in the car. In sum, even though Plaintiff was convicted of battering Deputy Harris, his claim that Deputy Laursen and Deputy Harris used excessive force in an otherwise lawful arrest are not barred as a matter of law. *See Adams*, 223 F. App'x at 761 (allowing excessive force claim based on officer's post-arrest conduct).

        C.        Qualified Immunity protects Deputies Laursen and Harris from claims for inadequate medical care.

The Deputies argue that, under the doctrine of qualified immunity, they are not liable for violations of Plaintiff's Fourteenth Amendment right to medical care. *See Estrada v. Cook*, 166 F.Supp.3d 1230, 1244 (D. N.M. 2015) (stating that the Eighth Amendment's standard of deliberate indifference to a prisoner's medical needs applies to arrestees under the Fourteenth Amendment's Due Process protections). Plaintiff does not address the Deputies' assertion of qualified immunity from this claim. Therefore, Plaintiff has failed to meet his burden to show that Deputies Laursen and Harris acted with deliberate indifference to Plaintiff's medical needs arising from injuries sustained during the arrest.

Under the due process clause of the Fourteenth Amendment, police must provide medical care to individuals who have been injured while being apprehended. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (finding that an arrestee's right to care derives from the Fourteenth Amendment). This duty is fulfilled, however, when officers promptly summon the necessary medical help or take the suspect to the hospital. *Id.* at 245; *Wilson v. Meeks*, 52 F.3d 1547, 1555–56 (10th Cir. 1995) *abrogated on other grounds, Saucier v. Katz,* 533 U.S. 194 (2001) (distinguishing "medical aid" from "first aid and finding that an officer who promptly

summoned medical help did not violate arrestee's right to medical care). However, a delay in medical care is actionable "where the plaintiff can show that the delay resulted in substantial harm." *Estrada*, 166 F. Supp. 3d at 1244.

Plaintiff first alleges that "at no time prior to the arrival of any medical personnel did VCSD deputies attempt to render first aid of any kind to Plaintiff Pierce." (Compl. ¶ 29.) Plaintiff alleges that Defendants called an ambulance and instead of rendering first aid, they searched the vehicle. After calling an ambulance, Defendants were under no constitutional obligation to immediately render medical treatment instead of working to secure the scene. *Estrada*, 166 F. Supp. 3d at 1245.

Plaintiff further asserts that "several minutes elapsed prior to the arrival of an ambulance which was needed to assess and treat his injuries." (Compl. ¶ 31.) Plaintiff, however, does not attribute the delay in response to Deputies Laursen and Harris. Plaintiff contends that while ambulance personnel were assessing his injuries, Deputies Laursen and Harris "continued to hurry medical personnel to finish with Plaintiff Pierce[.]" (*Id.*) But Plaintiff failed to allege that the "hurrying" of medical personnel caused them to render inadequate care. Plaintiff alleges that he asked to be taken to a hospital but was instead taken straight to the Valencia County Detention Center (VCDC). However, VCDC personnel refused to book Plaintiff "as a result of the severity of his many bodily injuries." (*Id.* ¶ 33.) Deputy Laursen then took Plaintiff to a nearby medical clinic where he "received just enough treatment to stop the bleeding[.]" (*Id.* ¶ 34.) Although an immediate trip to a medical clinic or hospital may have been beneficial, there is simply no allegation that this delay caused additional substantial harm. Nor are there allegations that Deputy Laursen caused the medical clinic personnel to render inadequate care.

13

Due to the inadequacy of the Complaint and the Plaintiff's failure to address qualified immunity in the Response and Surreply, the Court will dismiss the claim of inadequate medical care in Count 11. Plaintiff simply failed to show that Deputy Laursen and Deputy Harris violated Plaintiff's right to adequate medical care.

IT IS ORDERED that the DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY FOR SUMMARY JUDGMENT UNDER *HECK V. HUMPHREY* AND ON THE BASIS OF QUALIFIED IMMUNITY (Doc. No. 18) is granted in part and denied in part as follows:

1. Plaintiff's Count 11 claim against Deputy Harris and Deputy Laursen for excessive force in violation of the Fourth Amendment is not barred under *Heck*; therefore, the claims will go forward;

2. Plaintiff's Count 11 claim against Deputy Laursen and Deputy Harris for inadequate medical care in violation of the Fourteenth Amendment will be dismissed; and

3. Plaintiff's Count 11 claims against the Board of Commissioners of Valencia County and Sheriff Louis Burkhard based on the theory of *respondeat superior* will be dismissed in their entirety.

/s/ James A. Parker
SENIOR UNITED STATES DISTRICT JUDGE